817 A.2d 1196 (2003)
WELLS FARGO BANK OF MINNESOTA, NA, Successor by Merger to Northwest Bank of Minnesota as Trustee of Solomon Brothers Services Corporation Mortgage Securities VII, Inc. Mortgage Loan Trust 1999AQI Under Pooling and Services Agreement dated March 1, 1999, Appellant,
v.
TAX CLAIM BUREAU OF MONROE COUNTY, Gardner Family Trust, c/o Glen Keller, Steven Gladstone, and Robert E. Plank, Jr.
Commonwealth Court of Pennsylvania.
Argued November 4, 2002.
Decided January 3, 2003.
Publication Ordered March 6, 2003.
*1197 Autherine B. Smith, Philadelphia, for appellant.
Steven D. Gladstone, Mt. Pocono, for appellees.
Before COLINS, President Judge, COHN, J., and MIRARCHI, JR., Senior Judge.
OPINION BY Senior Judge MIRARCHI, Jr.
Wells Fargo Bank of Minnesota (Wells Fargo) appeals from an order of the Court of Common Pleas of Monroe County (trial court) which denied its petition to set aside a tax sale. We reverse.
On October 26, 1993, Catherine A. Colarco took title to property located at 1296 Winding Way, Tobyhanna, Pennsylvania and identified as Tax Parcel 3/9F/1/233 (the property). On February 5, 1999, Colarco executed a mortgage on the property to Ameriquest Mortgage Company, which later assigned it to Wells Fargo. On March 3, 2000, Wells Fargo filed a complaint in mortgage foreclosure against Colarco for default under the terms of the mortgage. A default order in favor of Wells Fargo was entered in the foreclosure action on May 11, 2000. In order to satisfy the judgment against Colarco, a United States Marshal's sale was held on May 17, 2001. Wells Fargo purchased the property at the sale. On July 13, 2001, the United States Marshal executed a deed in favor of Wells Fargo. The deed was recorded in the Office for the Recording of Deeds of Monroe County on July 24, 2001.
Colarco had failed to make payments of real estate taxes on the property for the year 1999. On July 11, 2001, the Monroe County Tax Claim Bureau (Bureau) sent Colarco notice that the property would be sold at a tax sale to be held on September 28, 2001. Colarco executed a return receipt for the certified mail. Notice of the tax sale was published in the Monroe Legal Reporter and the Pocono Record on August 17, 2001. The property was also posted with a notice of sale on August 1, 2001. On September 28, 2001, the Bureau sold the property to the Gardner Family Trust, Steven Gladstone, and Robert E. Plank, Jr. (collectively, Appellees). On October 5, 2001, the Bureau sent notice to Wells Fargo that the property had been sold at an upset tax sale. This notice is the first notification to Wells Fargo that is reflected in the Bureau's file.
On December 6, 2001, Wells Fargo filed a petition to set aside the tax sale. Wells Fargo alleged that the sale was improper because the Bureau failed to correctly identify the name and address of the record owner, failed to correctly serve notice on the record owner and failed to *1198 provide notice of the sale to Wells Fargo as required by Section 602 of the Real Estate Tax Sale Law (Law).[1] The trial court concluded that the Bureau complied with all the notice requirements set forth in Section 602. The trial court also concluded that publication in the Monroe Legal Reporter and the Pocono Record and posting the premises subject to sale constituted constructive notice to Wells Fargo. Finally, the trial court concluded that, once the Bureau has complied with all the notice requirements mandated by law, it is not responsible to monitor the public record and provide further mail notice to late hour purchasers. Wells Fargo now appeals to this Court.[2]
On appeal, Wells Fargo argues that the trial court erred in (1) determining that there was strict compliance with the notice requirements of Section 602 of the Law; (2) in concluding that Wells Fargo had actual notice of the tax sale, and (3) in determining what constitutes a "late hour purchaser."
Section 602 of the Law requires the Bureau to provide three separate methods of notice: publication at least thirty days prior to the sale, notification by certified mail at least thirty days prior to the sale, and posting of the property at least ten days prior to the sale. If any of the three types of notice is defective, the tax sale is void. Hunter v. Washington County Tax Bureau, 729 A.2d 142 (Pa. Cmwlth.1999). The Bureau has the burden of proving compliance with all applicable notice provisions. McElvenny v. Bucks County Tax Claim Bureau, 804 A.2d 719 (Pa.Cmwlth.2002).
There must be strict compliance with the notice provisions of the Law to guard against the deprivation of property without due process of law. Difenderfer v. Carbon County Tax Claim Bureau, 789 A.2d 366 (Pa.Cmwlth.2001). To meet the due process requirements, the taxing authority is required to make a reasonable effort to discover the identity and address of a person whose interests are likely to be affected by the tax sale. Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In Tracy v. County of Chester Tax Claim Bureau, 507 Pa. 288, 489 A.2d 1334 (1985), our Supreme Court discussed the importance of proper notice in matters involving tax sales of real property. The Court stated:
Somehow, over the years, taxing authorities have lost sight of the fact that it is a momentous event under the United States and the Pennsylvania Constitutions when a government subjects a citizen's property to forfeiture for the non-payment of taxes. We have had occasion before to note that we hold no brief with willful, persistent and long standing tax delinquents, but at the same time, we have also observed that the `strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes.' Ross Appeal, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). As this Court stated in Hess v. Westerwick, `the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes.' 366 Pa. 90, 98, 76 A.2d 745, 748 (1950). The collection of taxes, however, *1199 may not be implemented without due process of law that is guaranteed in the Commonwealth and federal constitutions; and this due process, as we have stated here, requires at a minimum that an owner of land be actually notified by government, if reasonably possible, before his land is forfeited by the state.
Id. at 297, 489 A.2d at 1339.
In the case before us, the trial court concluded that the Bureau had complied with the notice requirements of Section 602. The trial court found that the Bureau had sent a certified letter to Catherine A. Colarco, the owner of the property prior to the date that Wells Fargo recorded the deed to the property. The trial court also found that after Wells Fargo recorded its deed, the Bureau provided notice by publication on August 17, 2001 and posted the premises on August 9, 2001. The trial court concluded that once the Bureau had fully complied with the notice provision of the Law, it need not continue to monitor the public record for every recorded deed prior to the date of the sale.
Wells Fargo argues that the trial court erred in concluding that the Bureau had provided the notice required by Section 602. Wells Fargo contends that the notices published in the Monroe Legal Journal and in the Pocono Record identified Catherine A. Colarco as the owner of the property. Wells Fargo further contends that the notice posted on the property listed Catherine A. Colarco as the owner. Wells Fargo contends that the first notice it received in relation to the property was the letter from the Bureau of October 5, 2001 informing it that the property was sold at a tax sale.
In support of its argument that the trial court erred in concluding that the Bureau complied with Section 602, Wells Fargo relies on Hicks v. Och, 17 Pa.Cmwlth. 190, 331 A.2d 219 (1975). In that case, the local tax claim bureau notified the property owner by registered mail of the scheduled tax sale of her property. However, the published notice listed the names of the previous owners, rather than the name of the current owner. On appeal, this Court held that this error, in itself, was sufficient to invalidate the tax sale. The Court stated: "[P]robably the posted notice and most certainly the advertisement notice are aimed at a far greater range of interested parties than merely the owner to whom the registered mail notice is directed." Id. at 220. This Court further stated:
[T]he purpose of the advertising was to notify the public in general. Not only does this tend to make the sale `well-attended by bidders', but also it informs many people who may be concerned for the welfare of the owners. Such advertising, calling attention to the owners' plight might prompt these people to take such steps as they may consider appropriate to see to it that the owners' interests are protected. Therefore, since the advertising requirements of the law admittedly have not been met, the tax sale must fall.
Id.
In the case before us, the published notices and the posting of the property identified Catherine A. Colarco as the owner of the property. However, Catherine A. Colarco was not the owner of the property at the time the notices were published and the property was posted. Section 602 specifically requires that the name of the owner be included in the published notices. Because Wells Fargo was not identified as the owner of the property in the published notices and in the posted notice, the Bureau did not comply with the notice requirements of Section 602 of the Law.
*1200 The trial court also concluded that publication in the Monroe Legal Reporter and the Pocono Record and posting the premises subject to sale constituted constructive notice to Wells Fargo. The formal requirements of Section 602 need not be met when a taxpayer has actual notice of a tax delinquency and scheduled sale. Sabbeth v. Tax Claim Bureau of Fulton County, 714 A.2d 514 (Pa.Cmwlth. 1998). Actual notice encompasses both express actual notice and implied actual notice. Id. There is no evidence of record to support a finding that Wells Fargo had either express or implied actual notice of the tax sale. See, e.g. Sabbeth (property owner had implied actual notice of tax sale where she worked directly across the street from the subject property on which notices were posted stating that the subject property was subject to tax sale of the tax sale, where she regularly went into her office to review her mail, and where a certified letter of notice from the tax claim bureau remained upon her desk unattended for fifty-three days).
Appellees suggest that Wells Fargo failed to act in a reasonable manner by not investigating the status of the taxes on the property prior to purchasing. The trial court also found it "incredible that an attorney or title company representing [Wells Fargo] in purchasing this property, would make no inquiry concerning the status of the payment of taxes on the premises." Trial Court Opinion, p. 6. In Clawson Appeal, 39 Pa.Cmwlth. 492, 395 A.2d 703, 706 (1979), this Court explained:
The [Law], however, impose[s] duties, not on owners, but on the agencies responsible for sales; and such of those duties as relate to the giving of notice to owners of impending sales of their properties must be strictly complied with. Grace Building Co. v. Clouser, 5 Pa. Cmwlth. 110, 289 A.2d 525 (1972). Hence, the inquiry is not to be focused on the neglect of the owner, which is often present in some degree but on whether the activities of the Bureau comply with the requirements of the statute.
Thus, any alleged failure on the part of Wells Fargo is irrelevant in the determination of whether the Bureau complied with its statutory obligations.
The order of the trial court is reversed.

ORDER
AND NOW, this 3rd day of January, 2003, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is hereby reversed.
NOTES
[1] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. § 5860.602.
[2] Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, erred as a matter of law or rendered a decision with a lack of supporting evidence. Simmons v. Delaware County Tax Claim Bureau, 796 A.2d 400 (Pa.Cmwlth. 2002).