**Olga KRAWEC, Executrix of the Estate of Wolodymyr Jaciw, Deceased, Appellant,**

v.

**CARBON COUNTY TAX CLAIM BUREAU.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.

Decided Feb. 11, 2004.

Andrew E. Steckiw, Philadelphia, for appellant.

Vincent Garvey, Jr., Hazleton, for appellee.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Olga Krawec (Claimant), Executrix of the Estate of Wolodymyr Jaciw, appeals from the June 13, 2003, order of the Court of Common Pleas of Carbon County (trial court) denying Claimant's exceptions to the trial court's confirmation of the tax upset sale of a vacant lot located at the Ukrainian Homestead in Carbon County (Property).

On August 18, 1981, Wolodymyr Jaciw (Taxpayer) purchased the Property and, on August 21, 1981, recorded the deed in Carbon County. Initially, the deed listed Taxpayer's address as 1316 N. Franklin Street, Philadelphia, Pennsylvania. Subsequently, Taxpayer moved to Apt. 414, 911 N. Franklin Street (Franklin Street) in Philadelphia, Pennsylvania, and resided there until his death on December 31, 2001. On April 16, 2001, the Carbon County Tax Claim Bureau (Bureau) sent a "Notice of Return and Claim" (First Notice) to Taxpayer at Franklin Street, certified mail, return receipt requested, for delinquent taxes for the year 2000 in the amount of $98.64. (R.R. at 30a.) Taxpayer signed the First Notice, and the return

receipt card was returned to the Bureau; however, the year 2000 taxes remained unpaid. Taxpayer died on December 31, 2001. On January 9, 2002, Taxpayer's will was probated, and the Register of Wills of Philadelphia County issued Letters Testamentary to Claimant.

On March 22, 2002, the Bureau sent a second "Notice of Return and Claim" (Second Notice) to Franklin Street. The Second Notice also was sent by certified mail, return receipt requested, and sought payment of delinquent taxes for the year 2001 in the amount of $222.04. This Second Notice, however, was addressed to "Jaciw, Estate of Wolodymyr" (Estate).[1] (R.R. at 31a.) The Second Notice was returned to the Bureau marked "Deceased." (R.R. at 31a–32a.) In June 2002, the Bureau sent a "Notice of Public Sale" (Third Notice) to the Estate at Franklin Street by certified mail, return receipt requested. The Third Notice indicated that the Property would be sold at a tax upset sale on September 20, 2002, for delinquent taxes in the amount of $292.83. (R.R. at 33a.) The Third Notice was returned to the Bureau marked "attempted not known." (R.R. at 34a.)

According to the Bureau, when the Third Notice was returned marked "attempted not known," the Bureau sought an alternative address for Taxpayer or his Estate by checking its files, the county telephone directory and the records of the tax assessment bureau, the tax collector and the recorder of deeds. Despite these efforts, the Bureau found no such address. Therefore, on August 11, 2002, the Bureau posted a "Notice of Return and Claim" and "Notice of Public Sale" (Fourth and Fifth Notices, respectively) on a tree located on the Property. On August 21, 2002, the

---

1. During the trial court proceedings, the Bureau acknowledged that it became aware of Taxpayer's death after sending the First Notice to Taxpayer and before it sent the Second Notice addressed to Taxpayer's Estate. (R.R. at 6a.)

Bureau sent yet another "Notice of Public Tax Sale" (Sixth Notice) addressed to Taxpayer's Estate at Franklin Street by first class mail. The Sixth Notice was returned to the Bureau marked "Not Deliverable as Addressed—Unable to Forward." (Trial court op. at 2–3.) No taxes were paid on Taxpayer's Property.

On September 20, 2002, the tax upset sale was held, and the Property was sold for $1,010. On September 26, 2002, the Bureau sent a notice of the sale to Taxpayer's Estate at Franklin Street. This final notice once again was returned to the Bureau marked "deceased." (R.R. at 40a.) In October 2002, the Bureau filed its consolidated return for the 2000 year upset tax sale, which was confirmed *nisi* by the trial court. On November 8, 2002, Claimant filed timely exceptions to the September 2002 upset sale, alleging that she did not receive actual notice of the tax sale.

■ After a hearing, the trial court determined that Claimant failed to allege or identify any failure by the Bureau to comply with statutory procedures. (Trial court op. at 5.) Concluding that Claimant failed to set forth a prima facie challenge to the tax sale, the trial court determined that the presumption of regularity[2] applied and dismissed Claimant's exceptions. Claimant appeals to this court, renewing her argument that she did not receive actual notice of the tax sale.[3] We agree.

■ In a tax sale case, the taxing agency has the burden of proving compliance with the statutory notice provisions. *In Re Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d 475 (Pa. Cmwlth.2003). A presumption of regularity attaches to tax sales; however, a property owner can overcome this presumption whenever he or she states a prima facie challenge to the sale based on the agency's non-compliance with statutory tax sale requirements. *In re 1999 Upset Sale of Real Estate*, 811 A.2d 85 (Pa.Cmwlth.2002). Technical compliance with the statutory notice requirements may not, in some circumstances, satisfy the demands of due process in effecting a tax sale. *Geier v. Tax Claim Bureau*, 527 Pa. 41, 588 A.2d 480 (1991). If any method of notice is defective, the tax sale is void. *Wells Fargo Bank of Minnesota, NA v. Tax Claim Bureau*, 817 A.2d 1196 (Pa.Cmwlth.2003).

■ Section 602 of the Real Estate Tax Sales Law (Law)[4] requires that where property is to be exposed to a tax upset sale, the Bureau must provide three separate methods of notification to the property owner: (1) publication of the tax sale at least thirty days in advance of the sale; (2) notification of the sale to each owner by certified mail at least thirty days in advance of the sale; and (3) posting notice of the sale on the property at least ten days prior to the sale. 72 P.S. § 5860.602. Section 607.1(a) of the Law[5] requires additional notification efforts when "mailed no-

---

**2.** In *Hughes v. Chaplin*, 389 Pa. 93, 95, 132 A.2d 200, 202 (1957) (citations omitted), our supreme court stated that "a prima facie presumption of the regularity of the acts of public officers exists until the contrary appears. Such a presumption is a procedural expedient. In tax sales cases it is particularly suitable."

**3.** Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, clearly erred as a matter

of law, or rendered a decision unsupported by the evidence. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285 (Pa. Cmwlth.1996).

**4.** Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602.

**5.** Added by the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

tification is either returned without the required receipted personal signature . . . or under other circumstances raising a significant doubt as to the actual receipt . . . or is not returned or acknowledged at all. . . ." 72 P.S. § 5860.607a(a). Section 607.1(a) states, in part:

> The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed. . . .

72 P.S. § 5860.607a(a). Thus, where it is obvious that notice is not effectively reaching the owners of record, the Bureau must go beyond the mere ceremonial act of notice by certified mail. *Farro v. Tax Claim Bureau,* 704 A.2d 1137 (Pa.Cmwlth.1997), *appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998).

The Law's notice requirements must be strictly construed to guard against the deprivation of property without due process of law, and the taxing agency must make a reasonable effort to discover the identity and address of a person whose interests will likely be affected by the sale. *Wells Fargo.* A taxing agency's duty to investigate is confined to determining the owners of record and then to "use ordinary common sense business practices to ascertain proper addresses where notice of the tax sale may be given." *In Re Tax Sale of Real Property Situated in Jefferson Township,* 828 A.2d at 479. The Bureau, however, is not required to perform the equivalent of a title search or to make decisions to quiet title. *Farro.*

Section 607.1(a) does not provide an exhaustive list of the additional steps that the Bureau should take to locate the owner of property subject to forfeiture, and we emphasize that a taxing agency must be cognizant of any unique facts or circumstances that may impact on its attempt to locate the owner of such property. There is no question that the Bureau followed many of the suggested investigatory methods. Here, however, notices marked "Deceased" would "rais[e] a significant doubt as to the . . . actual receipt" of the Bureau's notices. 72 P.S. § 5860.607a(a). Indeed, the Bureau does not dispute that it knew Taxpayer was deceased. Thus, in reviewing the trial court's denial of Claimant's exceptions, we are confronted with a *very narrow question,* that is, whether the Bureau's failure to make inquiry of the Register of Wills of Philadelphia County[6]

---

6. Section 3131 of the Probate, Estates and Fiduciaries Code (Code) states:

> The will of a decedent domiciled in the Commonwealth at the time of his death shall be probated only before the register of the county where the decedent had his last family or principal residence. If the decedent had no domicile in the Commonwealth, his will may be probated before the register of any county where any of his property is located.

20 Pa.C.S. § 3131. Because Taxpayer was domiciled in Philadelphia, his will could be probated only before the Register of Wills of Philadelphia County. If the Bureau had made an inquiry into whether Taxpayer had a probated will, its search would have begun and ended in Philadelphia County. We cannot perform a proper analysis of this case without considering the effect that this statute had on the Bureau's duty to provide proper notice.

was reasonable in light of the Bureau's knowledge that Taxpayer was deceased.[7] We hold that it was not.

▮ Here, Taxpayer resided in Philadelphia and paid his taxes for over twenty years. While still living, Taxpayer signed the First Notice. After Taxpayer died, the Bureau sent the Second Notice addressed to Taxpayer's *Estate* at Franklin Street, which was returned to the Bureau marked "Deceased." Nevertheless, the Bureau continued to send notices to Taxpayer's Estate at that address. Upon knowledge that Taxpayer was deceased, however, "ordinary common sense business practices" would dictate that the Bureau should inquire of the Register of Wills whether a will had been probated for Taxpayer.[8] Indeed, Taxpayer's will was probated two months before the Bureau sent its *Second* Notice to the Estate in March 2002. The will clearly listed Claimant's information and the name and address of Taxpayer's specific devisee; this would have given the Bureau all the information needed to effect proper notice of the tax sale of the property. The Bureau should have inquired of the Register of Wills of Philadelphia County whether an alternative address could be ascertained for Taxpayer prior to the sale of the property. Because the Bureau failed to do so, it did not meet the notice requirements, and the tax sale is void. *Wells Fargo.*[9]

Accordingly, we reverse.

7. In *Jefferson Township,* an Allegheny County property owner whose Somerset County property had been sold at a tax sale contended that the tax bureau violated the notice provisions of section 607.1 of the Law by failing to exercise reasonable efforts to discover her whereabouts. However, we held that the tax bureau had done all that was required: proper notice was sent to the proper address, the property owner chose not to claim the mail and notice sent was not returned to the tax bureau. It is these unique facts that differentiate the case before us from *Jefferson Township.* The property owner in *Jefferson Township* had contended that the tax bureau easily could have determined her office address in Allegheny County simply by looking in the Allegheny County phone book or conducting a search on the Internet. In rejecting this argument, we concluded that such efforts were not reasonable but, rather, extraordinary. We noted that the tax bureau had checked its tax assessment records and determined that it had the proper address in Allegheny County, and there was nothing in the record to suggest that a further search would have revealed an alternative address. Under the circumstances in *Jefferson Township,* we properly concluded that requiring the tax bureau to search further would impose an unreasonable burden that could likely reach global proportions. Clearly, that is not this case.

In contrast to *Jefferson Township,* the notice here was returned to the Bureau marked "deceased." Given this information, the Bureau was on notice that a further search would likely yield an alternative address. Moreover, the Bureau was not confronted with a situation that would call for extraordinary measures to effect notice. To the contrary, there would be no chance that a broad search would be required. Instead, the Code clearly indicates where such address could be determined. Because the rationale in *Jefferson Township* would not be implicated here, that case does not control.

8. Such an inquiry is only reasonable under the circumstances; however, we would not expect the Bureau to pursue extraordinary methods of investigation. Therefore, if the Bureau had made the proper inquiry of the Register of Wills of Philadelphia County but found no probated will, this court would not suggest that the Bureau did not satisfy the notice requirements.

9. Although the Bureau conducted a swift sale of the Taxpayer's property before his Estate completed administration, it would appear that Claimant, as the executrix of Taxpayer's Estate, was negligent in failing to notify the Bureau of a change in address or to inquire into the status of taxes on the property. We note, however, that the Law "impose[s] duties, not on owners, but on the agencies responsible for sales ... [and] the inquiry is not to be focused on the neglect of the owner ... but on whether the activities of the Bureau comply with the requirements of the statute." *Wells Fargo,* 817 A.2d at 1200.

*ORDER*

AND NOW, this 11th day of February, 2004, the order of the Court of Common Pleas of Carbon County, dated June 13, 2003, is hereby reversed.

DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent, because the majority opinion is inconsistent with our recent decision in *In re Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d 475 (Pa.Cmwlth.2003).

In *Jefferson Township*, notices of tax sale pending in Somerset County were sent to the property owner in Allegheny County but were returned "unclaimed." The property owner argued in part she was a public figure in Allegheny County who should have been located by search of the Allegheny County phone book or the internet. In rejecting this argument we stated, "[I]t is clear from the language of Section 607.1[1] *that the Bureau was not required to check any records outside of Somerset County* for her correct or alternate address...." *Id.* at 480 (emphasis added). As to the property owner's argument that in-county records were not checked for an alternate address, we stated, "[N]othing in the record suggests that such a search would have revealed anything other than the address to which the notices were mailed." *Id.*

The majority holds that the Carbon County Tax Claim Bureau unreasonably failed to investigate records at the Register of Wills of Philadelphia County, and by this failure the Claimant overcame the presumed validity of the tax sale. This holding is inconsistent with *Jefferson Township* in two ways. First, the majori-

ty requires review of out-of-county records. Second, the Claimant here failed to show that any records at the Register of Wills of Philadelphia County contained a useful address. As in *Jefferson Township*, Claimant's burden included showing a failure to investigate *and* showing materiality of the failure. Without both, Claimant cannot overcome the presumption of validity.

For the foregoing reasons, I would affirm.

---

**1.** Section 607.1 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amend-*    *ed,* 72 P.S. § 5860.607a.